# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

In the Matter of the Estate of Paul Brandon Barringer, II

Hampton Barringer Luzak, Appellant,

v.

Merrill B. Light, Merrill U. Barringer, as Personal Representative of the Estate of Paul Brandon Barringer, II, J. Randolph Light, Jr., Merrill B. Light as putative trustee of the Paul B. Barringer, II, Revocable Trust dated December 4, 1998, and Merrill B. Light as Trustee of the Merrill Barringer Light Revocable Trust, Defendants,

of which Merrill U. Barringer, as Personal Representative of the Estate of Paul Brandon Barringer, II, is the Respondent,

AND

In the Matter of the Estate of Paul Brandon Barringer, II

Hampton Barringer Luzak, Appellant,

v.

Merrill U. Barringer, Respondent.

Appellate Case No. 2025-000076

———————

Appeal From Beaufort County
Robert J. Bonds, Circuit Court Judge

———————

Opinion No. 6156

Heard May 12, 2026 – Filed July 29, 2026

---

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

Desa Ballard, of Ballard & Watson, Attorneys at Law, of West Columbia; James R. Gilreath and William Mitchell Hogan, both of The Gilreath Law Firm, PA, of Greenville; Charles B. Macloskie, of Macloskie Law Firm, of Beaufort; Thomas W. Traxler, of Carter Smith Merriam Rogers & Traxler, PA, of Greenville; and S. Alan Medlin, of Columbia, all for Appellant.

Harley Delleney Ruff, of Ruff & Ruff, LLC, of Beaufort, and James Ashley Twombley and Thomas Blase Iandoli, both of Twenge & Twombley, LLC, of Beaufort, all for Respondent.

---

**GEATHERS, J.:**  This appeal concerns a contested estate.  Appellant Hampton Luzak appeals the circuit court's order granting summary judgment in favor of Respondent Merrill Barringer (Mrs. Barringer) as to Luzak's causes of action for the imposition of a constructive trust and the enforcement of a purported contract not to revoke.  We affirm in part, reverse in part, and remand.

### FACTS AND PROCEDURAL HISTORY

Paul Barringer II died in 2016.  Pertinent to this case, he is survived by two daughters, Hampton Luzak and Merrill Light, and his wife, Mrs. Barringer.  Over the course of his life, Mr. Barringer executed various voluminous estate planning documents intended to govern the distribution of a large portfolio of assets: (1) a will and revocable trust in 1998, (2) two new wills and restated trusts in 2012, (3) another will and trust in 2014, and (4) a final will and trust in 2015.  Beginning with the 1998 documents and repeated throughout those that followed, Mr. Barringer granted a testamentary power of appointment to Mrs. Barringer over all of the property in his trust as follows:

My wife shall have the power upon her death by her last

will and testament or codicil thereto, making express reference to this power, to appoint any part or all of the property in this trust to or among my descendants, and in such manner, in trust or otherwise, as she may in such will provide, except that she shall have no power under any circumstances to appoint any of such property to herself, to her estate, to her creditors or to the creditors of her estate.

Simultaneous with Mr. Barringer executing his 1998 documents, Mrs. Barringer executed her own will. The parties agree that the general residuary clause in Mrs. Barringer's will declined to exercise the testamentary power of appointment, at least at that time:

All the rest, residue, and remainder of my property of every kind and description, and wherever located, including any lapsed or void devise (*but not including any property over which I may have a power of appointment*), I devise to the then acting Trustee or Trustees of The . . . Revocable Trust . . . .

(emphasis added). Mrs. Barringer has not since updated her will to change this clause to exercise the power of appointment.

Among the assets in Mr. Barringer's estate, the parties are focused primarily on his 20% voting share in a company he owned and ran, Coastal Forest Resources Company (CFRC). From the time when Mr. Barringer acquired this share after corporate restructuring until 2012, Mr. Barringer retained this 20% share and his daughters Luzak and Light each retained a 31.2% voting share, with the remainder voting share being held by a non-family member. Thus, Luzak and Light had equal control over CFRC and in the event they disagreed on a company decision, Mr. Barringer could use his 20% share to break the tie. However, in 2012, Mr. Barringer purportedly gifted his 20% share to Light in an undisclosed transfer, which effectively gave Light control over CFRC. Mrs. Barringer has never owned any voting shares in CFRC nor has she been involved in the workings of the company.

Sadly, Mr. Barringer suffered from dementia for the last several years of his life. Although the parties do not agree as to the timeline of his disease, Mr. Barringer reported to his physician as early as 2011 that he had been suffering from cognitive issues for "the last one or two years." This was, among other reasons, why in 2016,

when Mr. Barringer died, Luzak sued the Lights alleging undue influence and other claims relating to a lack of testamentary capacity. The 2016 litigation sought to unwind Mr. Barringer's estate back to the control of the 1998 documents, which includes unwinding the 2012 transfer of the voting share. For reasons we explain, the 2016 litigation is still pending below.

In 2019, Luzak brought the instant action against Mrs. Barringer. Luzak sought the imposition of a constructive trust and the enforcement of a purported contract between Mr. and Mrs. Barringer wherein she alleges Mrs. Barringer agreed to never revoke her 1998 estate documents. For the constructive trust claim, Luzak alleged Mrs. Barringer unilaterally promised—potentially by silence—not to use her power of appointment and that Mr. Barringer gave her the power of appointment in reliance on this promise. Luzak sought to enjoin Mrs. Barringer from attempting to exercise the power of appointment granted to her by Mr. Barringer.

Later that year, Judge Mullen consolidated the 2016 and 2019 actions. In October 2020, Mrs. Barringer filed a motion for summary judgment as to the contract and constructive trust claims from the 2019 action. In opposing the motion, Luzak argued among other things that she had not had the opportunity to complete discovery and, therefore, summary judgment was inappropriate. Judge Mullen denied the motion for summary judgment.

Even though the actions had previously been consolidated, in December 2020, Judge Mullen ordered bifurcation of the matter into two trials: one for the claims from the 2019 action and the other for the claims from the 2016 action. The bifurcation order was promptly appealed, and in May 2021, this court dismissed the appeal, concluding the bifurcation order was not immediately appealable. Luzak filed a petition for a writ of certiorari with our supreme court.

On July 6, 2021, while the petition was pending, Judge Price granted summary judgment to the Lights on the testamentary capacity claims from the 2016 action, declaring the 2012 estate planning documents valid and controlling. In November 2021, Judge Bonds similarly granted summary judgment to Mrs. Barringer as to the contract and constructive trust claims from the 2019 action.[1] Luzak timely appealed

---

[1] As we noted, Judge Mullen had previously denied summary judgment as to these issues and found there was a genuine issue of material fact. Judge Bonds acknowledged this but reasoned that the parties had since had time to conduct additional discovery, with Luzak deposing additional witnesses including Neill

both summary judgment orders.

Our supreme court ultimately (1) denied certiorari as to this court's conclusion that the bifurcation order was not immediately appealable; (2) certified the appeals of Judge Price and Judge Bonds's summary judgment orders; (3) vacated the summary judgment orders pursuant to Rule 205, SCACR,[2] because the orders pertained to matters pending in the appeal of the bifurcation order; and (4) allowed any derivative claims to proceed on appeal. During oral argument, Luzak informed the supreme court that she was not going to pursue any derivative claims. In a memorandum opinion, the supreme court affirmed in part, reversed in part, and remanded. *See Est. of Barringer v. Light*, Op. No. 2024-MO-003 (S.C. Sup. Ct. filed Jan. 17, 2024). In light of Luzak abandoning any derivative claims, the supreme court directed the circuit court to reconsider Judge Mullen's bifurcation order on remand.

When the cases returned to the circuit court, Mrs. Barringer renewed her summary judgment motion as to the claims from the 2019 action, and Judge Bonds again granted the motion. Judge Bonds found that it was unnecessary to reconsider the bifurcation order in light of the summary judgment disposition of the matters from the 2019 action and instead held bifurcation in abeyance pending resolution of this appeal. Judge Bonds denied Luzak's subsequent motion for reconsideration. This appeal followed.

## ISSUES ON APPEAL[3]

I.  Did the circuit court err by failing to first designate the operative estate planning instrument before proceeding as though a valid power of appointment existed?

II. Did Luzak demonstrate the existence of a genuine issue of material fact as to either her claim for a contract not to revoke or a promise not to use the power

---

McBryde, the attorney who drafted the Barringers' 1998 estate planning documents, and John Jolley, the attorney who drafted the subsequent documents.

[2] Rule 205 provides, "Upon the service of the notice of appeal, the appellate court shall have exclusive jurisdiction over the appeal," but permits the lower court to proceed "with matters not affected by the appeal." Rule 205, SCACR.

[3] We have recast the issues on appeal for clarity.

of appointment such that summary judgment was improper?

III. Did the circuit court err by granting summary judgment before allowing Luzak the opportunity for full and complete discovery?

IV. Did the circuit court err by refusing to reconsider the bifurcation order?

V. Did the circuit court err by granting summary judgment when a previous circuit court judge had already denied summary judgment?

## STANDARD OF REVIEW

Appellate courts reviewing orders granting summary judgment apply "the same standard that governs the trial court under Rule 56, SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Vaughan v. Town of Lyman*, 370 S.C. 436, 440, 635 S.E.2d 631, 633 (2006). "[A]ll ambiguities, conclusions, and inferences arising in and from the evidence must be viewed in a light most favorable to the non-moving party." *Id.* at 440, 635 S.E.2d at 634.

To survive summary judgment, a party must "do more than simply show that there is some metaphysical doubt as to the material facts [but] must come forward with 'specific facts showing there is a *genuine issue for trial*.'" *Baughman v. Am. Tel. and Tel. Co.*, 306 S.C. 101, 115, 410 S.E.2d 537, 545 (1991) (citation modified) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). "[I]t is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine." *Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 463, 892 S.E.2d 297, 301 (2023) (quoting *Town of Hollywood v. Floyd*, 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).[4]

---

[4] One of Luzak's arguments is that the circuit court erred by requiring her to prove her entire case at the summary judgment stage because the circuit court purportedly considered the substantive evidentiary standard for constructive trust actions, which requires that a plaintiff prove her claim by "clear, definite, and unequivocal" evidence. *See Lollis v. Lollis*, 291 S.C. 525, 530, 354 S.E.2d 559, 561 (1987) ("In order to establish a constructive trust, the evidence must be clear, definite, and unequivocal."). We decline to address this issue because the circuit court stated in

**LAW AND ANALYSIS**

### I. Powers of Appointment Generally

"A power of appointment is a power that enables the donee of the power to designate recipients of beneficial ownership interests in or powers of appointment over the appointive property."  Restatement (Third) of Property (Wills & Don. Trans.) § 17.1 (2011).

Powers of appointment are often testamentary, meaning the donee can only appoint the appointive property via his own testamentary instrument, such as a will. *See, e.g.*, *Huggins v. Price*, 96 S.C. 83, 84, 79 S.E. 798, 798–99 (1913) (stating the plain language of a grant of a power of appointment limited its exercise to a testamentary exercise via the donee's last will and testament, and that as a result, the donee could not deed the subject property away while she was still living).  A donee of a power of appointment cannot contract with a party other than the donor to bind themselves to exercise the power in a certain manner.  *See Carmichael v. Heggie*, 332 S.C. 624, 628, 506 S.E.2d 308, 310 (Ct. App. 1998) (rejecting an inter vivos transfer of a fee simple interest in a property over which the donee had a power of appointment).

### II. Contract Not to Revoke

Luzak argues summary judgment was inappropriate on her claim seeking enforcement of a purported contract.  Luzak asserts that she demonstrated a genuine issue of material fact as to whether Mr. and Mrs. Barringer had contracted for Mrs. Barringer never to revoke her 1998 will wherein she declined to exercise her power of appointment.  We disagree.

A testator may enter into an enforceable contract to never revoke his will. S.C. Code Ann. § 62-2-701 (2022).  Section 62-2-701 prescribes three ways by which such a contract can be established:

> A contract to make a will or devise, or to revoke a will or
> devise, or not to revoke a will or devise, or to die intestate,
> if executed after the effective date of this act, can be

---

its order that it considered only whether Luzak raised a genuine issue of material fact, and we apply the same standard in our review here.

established only by (1) provisions of a will of the decedent stating material provisions of the contract; (2) an express reference in a will of the decedent to a contract and extrinsic evidence proving the terms of the contract; or (3) a writing signed by the decedent evidencing the contract and extrinsic evidence proving the terms of the contract. The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.

§ 62-2-701. Luzak focuses on (1) and (3). She first argues that Mrs. Barringer's own 1998 will, wherein she declined to exercise the power of appointment, constitutes a writing containing the material provisions of a contract not to revoke. She also argues, pursuant to the third manner prescribed by the statute, that Mrs. Barringer's will is a writing evidencing the contract that she avers is supported by extrinsic evidence.

We decline to give license to Luzak's argument that declining to exercise a power of appointment is sufficient evidence to survive summary judgment on a claim to enforce a purported contract not to revoke. Mrs. Barringer's will contains a standard, general residuary clause declining to exercise her power of appointment. This can hardly be called a "material provision" of a contract for her to surrender the power of appointment *forever*. Rather, Mrs. Barringer—like anyone—retained the right to modify or change her will going forward to exercise the power of appointment, including in the event that Mr. Barringer ultimately did predecease her. *See In re Estate of Pallister*, 363 S.C. 437, 448, 611 S.E.2d 250, 256 (2005) ("A will may be freely modified or revoked by a mentally competent testator, acting of the testator's own volition[] until the testator's death."); *see also* § 62-2-701 ("The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills."). Similarly, Mrs. Barringer's own will is not sufficient under the statute to qualify as "a writing signed by the decedent evidencing the contract."[5] Because we find that Mrs. Barringer's will is an insufficient writing

---

[5] Section 62-2-608 of the South Carolina Code (2022) provides a general residuary clause that does not specifically reference any power of appointment that the testator may hold is presumed *not* to exercise the power. § 62-2-608 ("A general residuary clause in a will, or a will making general disposition of all of the testator's property, does not exercise a power of appointment held by the testator unless specific reference is made to the power or there is some other indication of intention to include the property subject to the power."). If we accept Luzak's argument that *not*

for purposes of this contract claim, it is unnecessary to consider the extrinsic evidence Luzak points to as evidence of a contract not to revoke. We affirm the grant of summary judgment as to Luzak's claims to enforce a contract not to revoke.

## III. Constructive Trust

Luzak argues it was error for the circuit court to grant summary judgment as to her claim for the imposition of a constructive trust. Before addressing her specific arguments, we must first lay the groundwork with the applicable law.

> A constructive trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by the one holding the legal title. A constructive trust results from fraud, bad faith, abuse of confidence, or violation of a fiduciary duty which gives rise to an obligation in equity to make restitution. Fraud is an essential element, although it need not be actual fraud.

*Lollis*, 291 S.C. at 529–30, 354 S.E.2d at 561. Constructive trust actions are equitable in nature and arise by operation of law, not by the agreement of the parties. *See SSI Medical Servs., Inc. v. Cox*, 301 S.C. 493, 500, 392 S.E.2d 789, 793 (1990) ("A constructive trust arises entirely by operation of law without reference to any actual or supposed intentions of creating a trust."); *Lollis*, 291 S.C. at 530, 354 S.E.2d at 561 ("An action to declare a constructive trust is in equity[.]"). "Equity is less than demanding and quite flexible in prescribing the elements essential to a constructive trust." *Whitmire v. Adams*, 273 S.C. 453, 458, 257 S.E.2d 160, 163 (1979). To warrant the imposition of a constructive trust, the evidence must be clear, definite, and unequivocal. *See Carmichael v. Huggins*, 221 S.C. 278, 290, 70 S.E.2d 223, 228 (1952). Unlike an express trust action, a constructive trust action can rely on parol evidence. *Whitmire*, 273 S.C. at 458, 257 S.E.2d at 163.

---

exercising a power of appointment is evidence of the testator's intent to forfeit the right forever, then any will with a general residuary clause not making specific reference to a power of appointment could be subject to a challenge like Luzak's here.

*A. Applicability of § 62-2-701*

As an initial matter, we hold it was error for the circuit court to conclude section 62-2-701 required a writing for Luzak to prevail on her constructive trust claim, an equitable claim.

Section 62-2-701 plainly states that its applicability is to "[a] contract" relating to succession. Although the circuit court noted that some other states have interpreted statutes similar to section 62-2-701 as preempting equitable claims in the absence of a writing, South Carolina courts have not done so. To the contrary, South Carolina jurisprudence has historically recognized that the English common law exempted constructive trust claims based on oral promises from the writing requirement of the statute of frauds because the very purpose of a constructive trust claim is to prevent fraud. *See Searson v. Webb*, 208 S.C. 453, 458, 38 S.E.2d 654, 657 (1946) ("A constructive trust is the creation of the court and is permitted to be proved by parol [evidence] despite the statute of frauds upon the high and long established ground that the statute will not be permitted to shield a fraud."); *All v. Prillaman*, 200 S.C. 279, 301, 20 S.E.2d 741, 750 (1942) (recognizing that constructive trust claims can be based on oral promises because "equity will enforce such a trust despite the [s]tatute of [f]rauds[] upon the familiar formula that [c]ourts will not permit the statute to shield a fraud"); S.C. Code Ann. § 62-1-103 (2022) ("Unless displaced by the particular provisions of [the South Carolina Probate Code], the principles of law and equity supplement its provisions."); *see also Strype v. Lewis*, 180 S.W.2d 688, 692 (Mo. 1944) (observing that constructive trust claims based on oral promises were permitted by English common law notwithstanding the statute of frauds because such claims served "the same end, namely, prevention of fraud . . . by admitting evidence [that] the statute would in terms exclude, in order to prevent a party from applying property to a purpose foreign to that for which he undertook to hold it").

South Carolina courts have continued exempting constructive trust claims from the writing requirement after the enactment of section 62-2-701 in 1987. A 1990 case, *Chapman v. Citizens & Southern National Bank of South Carolina*, 302 S.C. 469, 395 S.E.2d 446 (Ct. App. 1990), also supports Luzak's insistence that the strict requirement for a writing in section 62-2-701 does not apply to equitable actions such as an action seeking to impose a constructive trust.[6]

---

[6] Section 62-2-701 took effect on July 1, 1987. *Chapman* was decided on July 23, 1990.

In *Chapman*, the evidence was undisputed that Mrs. Chapman orally agreed to give a certain property to Mr. Chapman's children during her lifetime or, alternatively, not to exercise her power of appointment that he had given her over the property. 302 S.C. at 478, 395 S.E.2d at 452. Yet, Mrs. Chapman had a "change of heart" after Mr. Chapman died and instead wished to use the power of appointment to grant the property to her own children. *Id.* at 480–81, 395 S.E.2d at 453.

Ultimately, the *Chapman* court enforced Mrs. Chapman's oral promise to Mr. Chapman not to exercise the power of appointment he granted to her by imposing a constructive trust. *Id.* at 475, 395 S.E.2d at 450. Although the court did not discuss section 62-2-701, it noted the constructive trust claim was one sounding in equity—not an action to enforce a *contract*. *Id.* at 482, 395 S.E.2d at 454 ("The invoking of a [constructive] trust is not enforcing the contract but is invoking equitable relief from a fraud or breach of confidence."). The *Chapman* court emphasized that it was undisputed that Mrs. Chapman promised not to exercise her power of appointment, which cast her later attempt to exercise the power in the light of bad faith. The court rejected the argument that enforcing the promise would violate public policy. *See id.* at 482, 395 S.E.2d at 454 (characterizing attempts by defendants in constructive trust actions to invoke public policy as "attempt[s] at a technical avoidance" and noting accepting such a "ruse . . . would be to compound a defendant's wrong").

Mrs. Barringer asserts the *Chapman* court simply overlooked section 62-7-701, and that reading *Chapman* to mean section 62-7-701 does not require a writing for constructive trust actions would defang the statute by enabling parties to simply recharacterize their claims as sounding in equity rather than in contract. We disagree. A claim for imposing a constructive trust is fundamentally distinct from a claim seeking to enforce a contract because constructive trust claims require fraud, wrongdoing, or breach of a confidential relationship as an essential element, whereas a contract obviously can be breached without any such misconduct. *See Lollis*, 291 S.C. at 529, 354 S.E.2d at 561 ("Fraud is an essential element [of a constructive trust claim], although it need not be actual fraud."). A plaintiff seeking to enforce a contract relating to succession cannot simply rebrand her claim as one for imposing a constructive trust to circumvent the requirement in section 62-2-701 for a writing; rather, she must allege (and produce sufficient evidence of) some sort of wrongful conduct in order to properly frame her claim as one for imposing a constructive trust. *See id.* at 530, 354 S.E.2d at 561 (rejecting a claim for constructive trust where the plaintiff "failed to show fraud, wrongdoing, or abuse of a confidential relationship"). We are satisfied that the differences between contract and equitable claims relating to succession negate the concern about undercutting the purpose of section 62-2-701.

### B. *Propriety of Summary Judgment*

Turning to the merits, Luzak asserts summary judgment was improper because there was a genuine issue of material fact as to whether Mrs. Barringer impliedly promised—even by silence or acquiescence—to never use her power of appointment in a manner that would alter Mr. Barringer's testamentary plans for his share of the CFRC voting stock.[7]

As evidence, Luzak points to the following: (1) Mrs. Barringer never had anything to do with CFRC; (2) Mrs. Barringer declined to exercise her power of appointment in her 1998 will; (3) affidavits from Luzak and her husband showed that Mr. Barringer intended to treat all of his children equally; (4) Mrs. Barringer was silent over the years with regard to her power of appointment, including during family meetings where succession was discussed; and (5) the drafting attorneys did not recall specifically discussing any power of appointment with Mr. Barringer.

We hold there is a genuine issue of material fact as to Luzak's theory that Mrs. Barringer promised not to use the power of appointment in a manner that would disturb Mr. Barringer's plans for his share of the voting stock.

The evidence in the record creates more than mere metaphysical doubt as to whether Mrs. Barringer impliedly promised—even by silence—to not interfere with Mr. Barringer's default plans for dispensing with his share of the voting stock. *See Baughman*, 306 S.C. at 115, 410 S.E.2d at 545 (noting summary judgment is appropriate if the nonmoving party raises mere, metaphysical doubt as to material facts); *see also Chapman*, 302 S.C. at 479, 395 S.E.2d at 452 (noting promises not to exercise a power of appointment—enforced in equity via imposition of a constructive trust—can be express or implied, even by silence). Luzak demonstrated that Mrs. Barringer never had anything to do with CFRC. Further, all of Mr. Barringer's estate planning documents contained specific plans relating to the CFRC shares and reflected a desire to treat his children equally with regard to the company. Mrs. Barringer also remained silent during family meetings where Mr. Barringer's succession plans for the voting stock were discussed. And, as Luzak pointed out, none of the drafting attorneys recalled discussing with Mr. Barringer any impact the power of appointment may have had on his plans for his share of the voting stock.

---

[7] To the extent Respondent suggests Luzak's theory that Mr. Barringer gave Mrs. Barringer a power of appointment only to expect her to never use it is paradoxical, we note this was exactly what transpired in *Chapman*.

Though a reasonable factfinder could resolve these factual tensions in favor of the power of appointment being meant to give Mrs. Barringer discretion in the event Mr. Barringer predeceased her, a reasonable factfinder could also conclude that Mrs. Barringer impliedly promised not to use her power of appointment to alter Mr. Barringer's comprehensive plans for what would become of his share of the voting stock. Therefore, viewing the evidence in the light most favorable to Luzak, we conclude there is a genuine issue of material fact as to whether Mrs. Barringer promised not to exercise her power of appointment to alter Mr. Barringer's plans for the voting stock. *See Brewer v. Stokes Kia, Isuzu, Subaru, Inc.*, 364 S.C. 444, 448–49, 613 S.E.2d 802, 805 (Ct. App. 2005) ("An appellate court will review summary judgment in a liberal manner so as to construe the record in favor of the nonmoving party and give the nonmoving party the benefit of all favorable inferences that might reasonably be drawn therefrom."). We are concerned only with whether Luzak established a genuine issue of material fact such that summary judgment was inappropriate; we take no position on whether Luzak is likely to prevail on her constructive trust claim at the conclusion of a trial.

We take a moment to note that at this point in the case, there are several legal and factual issues pending below—such as the threshold question of which set of testamentary documents are to be probated—that implicate the propriety of the bifurcation order and overlap Luzak's equitable claims and her still-pending testamentary capacity and undue influence claims. For example, the 2012 voting shares transfer weighs on whether there is a genuine factual dispute as to Mrs. Barringer's purported promise. Luzak characterizes this dilemma as a side effect of attempting to try equitable claims before legal claims, despite the law's general admonition to the contrary. *See generally Johnson v. S.C. Nat'l. Bank*, 292 S.C. 51, 55, 354 S.E.2d 895, 897 (1987) ("[W]hen issues common to both legal and equitable claims are to be tried in a single proceeding, legal issues are to be determined first, and the findings of the jury are binding on the sitting judge, as trier of the equitable claims."); *id.* ("[C]aution should be taken to assure that, under the circumstances of the case, a joint trial will not deprive a party of his right to a full jury trial of legal issues."). We agree with Luzak that these overlapping legal and factual issues make it difficult to foresee the impacts that affirming summary judgment on all of her claims would have on her still-pending actions pertaining to testamentary capacity and undue influence. Because summary judgment is a drastic remedy, and because we conclude there is a genuine issue of material fact as to whether Mrs. Barringer impliedly promised not to disturb Mr. Barringer's plans for the CFRC voting shares,

we reverse as to this issue and remand for a trial.[8]  Consequently, on remand, we reiterate the supreme court's direction to reconsider the bifurcation order.[9]

## IV.    Additional Discovery

Luzak argues summary judgment was inappropriate because she did not have a full and complete opportunity to acquire evidence critical to her claims. Specifically, she takes issue with the circuit court's refusal to allow her the

---

[8] Luzak's theory from its genesis in her complaint has been that Mrs. Barringer promised not to exercise the power—either entirely or with regard to the voting shares.  As such, this action is focused on remedying a breach of a confidential relationship.  Nevertheless, at oral argument before this court, Luzak mentioned for the first time the law of latent ambiguities, which are ambiguities that arise when the words of a testamentary instrument are applied to a particular object or subject.  *See In re Estate of Fabian*, 326 S.C. 349, 353, 483 S.E.2d 474, 476 (Ct. App. 1997) (explaining the distinction between latent and patent ambiguities).  The notion that Mr. Barringer's testamentary intent is not reflected by the power of appointment language—which is an interpretation question—was never before the circuit court, and it is not properly before this court.  Although Luzak may nonetheless argue for the imposition of a constructive trust and injunctive relief on the basis that Mrs. Barringer impliedly promised not to exercise the power of appointment in a manner that impacts the voting shares, the focus of this action cannot at this stage transform into parsing whether the power of appointment extends to include the voting shares. That question is one of rectifying a latent ambiguity in Mr. Barringer's will; the question presented by Luzak's pleadings is one of determining whether an enforceable promise was made outside the will.

[9] We recognize that Luzak also argues the circuit court erred by not first designating which of Mr. Barringer's instruments was operative before analyzing her claims. Luzak notes that a power of appointment cannot be created from thin air, but only from a valid instrument.  Luzak also argues that because the scope of a power of appointment is determined at the time when it is created, it is necessary to first determine which of Mr. Barringer's governing documents are controlling.  In light of our decision to reverse the grant of summary judgment as to the constructive trust claim, it is unnecessary for us to address these arguments.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting that when resolution of an issue is dispositive, the appellate court need not address the remaining issues).

opportunity to take additional deposition testimony from Mrs. Barringer. Appellant previously deposed Mrs. Barringer in March 2019, but the deposition was allegedly "cut short . . . over objection, after . . . just short of three hours."

"Summary judgment is a drastic remedy and must not be granted until the opposing party has had a full and fair opportunity to complete discovery." *Dawkins v. Fields*, 354 S.C. 58, 69, 580 S.E.2d 433, 439 (2003). "Nonetheless, the nonmoving party must demonstrate the likelihood that further discovery will uncover additional relevant evidence and that the party is not 'merely engag[ing] in a fishing expedition.'" *Id.* (quoting *Baughman*, 306 S.C. at 112, 410 S.E.2d at 544 (internal quotation marks omitted)). Luzak's argument on this point is without merit because she has not identified how additional time deposing Mrs. Barringer would amount to anything material other than claiming Mrs. Barringer is someone "whom you would think would have something to say," leaving Luzak's desire for additional discovery indistinguishable from a "fishing expedition." *See id.*

## V.    Law of the Case

Luzak argues Judge Mullen's previous order denying summary judgment and finding that there was a genuine issue of material fact constituted the law of the case, and that the circuit court was therefore barred from granting summary judgment. The circuit court acknowledged Judge Mullen's previous order but noted that new evidence had been taken, including the depositions of the attorneys who drafted the 1998 and post-1998 estate planning documents at issue.

We affirm because "[t]he fact that a different trial judge previously denied a motion for summary judgment does not preclude a moving party from renewing its motion once new evidence is gathered." *Smith v. Breedlove*, 377 S.C. 415, 421, 661 S.E.2d 67, 70 (2008); *see also Rice v. Doe*, 442 S.C. 160, 165, 898 S.E.2d 127, 130 ("When the circumstances that led to a prior ruling have changed, . . . the trial judge should not be bound by an order that no longer serves the interests of justice."). Between the time when Judge Mullen denied summary judgment and when Judge Bonds granted it, the parties produced several new depositions, including from two of the attorneys who drafted Mr. Barringer's estate planning instruments. Luzak herself even recognized that new, significant discovery had taken place since Judge Mullen's order as she highlighted this evidence in her motion to reconsider the grant of summary judgment below, stating that she "actually had more evidence in her favor for this repeat summary judgment motion than in the prior summary judgment

action."[10]

## CONCLUSION

To summarize, we hold summary judgment was appropriate as to Luzak's claim seeking to enforce a contract not to revoke her 1998 will. However, we hold Luzak raised a genuine issue of material fact as to whether Mrs. Barringer promised not to use the power of appointment to alter Mr. Barringer's default plans for the CFRC voting shares. Consequently, we affirm in part, reverse in part, and remand.

The circuit court properly recognized that in the event this matter was remanded, it would need to reconsider the bifurcation order pursuant to the supreme court's mandate. We take this opportunity to reiterate the supreme court's mandate that the bifurcation order be reconsidered on remand.[11]

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**HEWITT and CURTIS, JJ., concur.**

---

[10] *See Smith*, 377 S.C. at 421, 661 S.E.2d at 70–71 ("[I]t does not matter that [the non-moving party] conducted the discovery or that some of the evidence was arguably favorable to [the non-moving party]. [Rule 43(l), SCRCP,] requires a different 'set of facts,' which were established due to the substantial amount of discovery that occurred after [the moving party's] first summary judgment motion.").

[11] Luzak also asserts that she can enforce the alleged promise not to exercise the power of appointment via promissory or equitable estoppel. The circuit court concluded that these were not properly pled in the complaint. We agree and affirm the circuit court's ruling as to these theories.